IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IRENE GALLEGOS,

        Plaintiff,

v.                                        No.: 1:15-cv-01143-MV/KBM

BEHAVIORAL HEALTH SERVICES OF NEW
MEXICO, LLC d/b/a CENTRAL DESERT BEHAVIORAL
HEALTH CENTER; FUNDAMENTAL CLINIC AND
OPERATIONAL SERVICES, LLC; LAWRENCE STORY,
LMSW-IP, LMFT, in his official capacity as Chief Executive
Officer of Central Desert Behavioral Health Center;
DAVID DURHAM, MD; JANET STONE, RN;
and DOES 1-10,

        Defendants.

## AMENDED COMPLAINT FOR MEDICAL NEGLIGENCE, HOSPITAL NEGLIGENCE, GENERAL NEGLIGENCE, NEGLIGENCE *PER SE*, BREACH OF ACTUAL AND IMPLIED CONTRACT, VICARIOUS LIABILITY AND *RES IPSA LOQUITUR*

COMES NOW Plaintiff, Irene Gallegos, by and through her attorneys, Guebert Bruckner P.C., and in support of her Amended Complaint, states as follows:

### PARTIES AND JURISDICTION

1.      Venue and jurisdiction are proper in the First Judicial District, Santa Fe County, New Mexico. *See* NMSA 1978, Section 38-3-1(A), ("[A]ll transitory actions shall be brought in the county … either the plaintiff or defendant, or any one of them in case there is more than one of either, resides; or…where the cause of action originated.").

2.      Ms. Gallegos is a resident of Sandoval County, New Mexico.

3.      Behavioral Health Services of New Mexico, LLC d/b/a Central Desert Behavioral Health Center ("Central Desert"), is a limited liability company, organized under the laws of Delaware and is the licensed operator of Central Desert.

4.       Behavioral Health Services of New Mexico, LLC's Registered Agent for service of process is National Corporate Research, Ltd., 850 New Burton Road, Suite 201, Dover, DE 19904.

5.       This cause of action occurred at Central Desert, located at 239 Elm Street NE, Albuquerque, NM 87102.

6.       Central Desert is located in Bernalillo County, New Mexico.

7.       Central Desert is a health care facility that offers services and programs for the treatment of behavioral health illness for older adults.

8.       Upon information and belief, Central Desert is owned and/or operated by Fundamental Clinical and Operational Services, LLC ("Fundamental").

9.       Fundamental is a foreign limited liability company, authorized and registered to do business in New Mexico.

10.      Fundamental's Registered Agent for service of process is National Corporate Research, located at 1012 Marquez Place, Suite 106B, Santa Fe, New Mexico 87505.

11.      At all times material hereto, upon information and belief, Lawrence Story, LMSW-IP, LMFT ("Defendant Story"), was the Chief Executive Officer for Central Desert, and as such, is responsible for hiring, training and supervising employees, agents, apparent agents or contractors at the Central Desert.

12.      Upon information and belief, Defendant Story is a resident of Albuquerque, Bernalillo County, State of New Mexico.

13.      At all material times, Behavioral Health, Central Desert, Fundamental and Defendant Story (collectively the "Corporate Defendants") provided health care services to men and women.

14.     At all times material hereto and upon information and belief, David Durham, MD was the resident physician in charge of assessing Ms. Gallegos' health condition and developing and implementing an initial treatment plan for Ms. Gallegos as well as continuing to assess Ms. Gallegos' ongoing treatment plan, care and well-being.

15.     Upon information and belief, David Durham, MD is a resident of Albuquerque, Bernalillo County, State of New Mexico.

16.     Upon information and belief, David Durham, MD was employed by Geriatric Associates, P.C., during the time that he provided care to Plaintiff.

17.     Geriatric Associates, P.C.'s registered agent for service of process is H. Huson Middleton, III, MD, 8210 Louisiana NE, Suite C, Albuquerque, NM 87113.

18.     At all times material hereto and upon information and belief, resident nurse Janet Stone, was the respective employee, agent, apparent agent or contractor acting within the course and scope of her employment, agency, apparent agency or contract with one or more of the Corporate Defendants.

19.     Upon information and belief, Ms. Stone is a resident of Albuquerque, Bernalillo County, State of New Mexico.

20.     At all times material hereto and upon information and belief, Ms. Stone was a nurse in charge of monitoring and caring for Ms. Gallegos.

21.     Upon information and belief, Ms. Stone was required to report to the Director of Nursing, who in turn, is required to report to Lawrence Story, CEO.

22.     Upon information and belief, at times material to this Amended Complaint, Does 1-10 were the respective employees, agents, apparent agents and/or contractors of one or more of the Corporate Defendants acting within the course and scope of his or her employment,

agency, apparent agency and/or contract with one or more of the Corporate Defendants ("Does 1-10").

24. At times material to this Amended Complaint, all acts and omissions by the Corporate Defendants, Defendant Stone and Does 1-10 were done within the course and scope of their employment, agency, apparent agency and/or contract.

24. On October 21, 2015, the New Mexico Medical Review Commission confirmed that Central Desert is not a qualified healthcare provider under the Medical Malpractice Act. *See* NMSA 1978, Section 41-5-1, *et al*.

25. On October 21, 2015, the New Mexico Medical Review Commission confirmed that Fundamental is not a qualified healthcare provider under the Medical Malpractice Act. *See* NMSA 1978, Section 41-5-1, *et al*.

## STATEMENT OF FACTS

26. Ms. Gallegos incorporates the foregoing allegations as though they were fully set forth herein. *See* Rule 1-010C NMRA.

27. Ms. Gallegos is 74 years of age with a long history of senile dementia.

28. On August 5, 2014, Central Desert admitted Ms. Gallegos to provide continued care for symptoms associated with a prior diagnosis of Alzheimer's disease, dementia, and psychotic disorder with delusions.

29. Ms. Gallegos's medical records from Central Desert indicate that she was a fall risk due to a history of falls, an elevated fall risk score, use of ambulatory devices, and an altered mental status.

30. Upon information and belief, Defendant Durham certified Ms. Gallegos' initial treatment plan and level of care.

31.     Dr. Durham's signature appears on the Treatment Plan Review for Ms. Gallegos. Despite Ms. Gallegos' known fall risk, Defendant Durham did not initiate a prevention plan for Ms. Gallegos.

32.     Upon information and belief, Defendant Durham was responsible for the continued care and well-being of Ms. Gallegos, as well as in charge of reassessing her treatment plan.

33.     Medical records note that Ms. Gallegos started to show increased signs of agitation, paranoia, and disruption in her medical condition while at Central Desert.

34.     Despite these shifts in Ms. Gallegos's behavior, Defendants Durham, Stone, and Does 1-10 did nothing to alter her treatment or care.

35.     On August 12, 2014, Central Desert met with Ms. Gallegos's daughter.

36.     Central Desert's medical records indicate Ms. Gallegos's medical treatment plan needed to change by giving Ms. Gallegos full skilled nursing care, however, a new treatment plan was never implemented.

37.     Over the next two days, medical records from Central Desert show Ms. Gallegos was increasingly depressed, guarded, confused, disorganized, and paranoid.

38.     On August 14, 2014, Ms. Gallegos sustained a serious fall and injured her left elbow.

39.     Ms. Gallegos's fall and substantial changes in behavior were not documented in the Psychiatric Medical Hospital ("PMH") notes.

40.     Defendant Stone was on duty on August 14, 2014, and upon information and belief, was the nurse in charge of Ms. Gallegos when Ms. Gallegos suffered the fall.

41.     On August 15, 2014, Ms. Gallegos's X-ray results show she suffered significant injuries to her left elbow, including soft tissue swelling and effusion.

42.     On August 16, 2014, Ms. Gallegos sustained a second serious fall further injuring her left arm and shoulder.

43.     Central Desert's medical records show Ms. Gallegos was unsteady on her feet and had already fallen.

44.     On August 17, 2014, Ms. Gallegos was sent to the Emergency Department, where it was determined she had suffered a fractured elbow.

45.     On August 18, 2014, Ms. Gallegos sustained her third serious fall, this time severely bruising her left hip and causing a subarachnoid hemorrhage in her brain.

46.     Defendant Stone was also on duty on August 18, 2014, and upon information and belief, was the nurse in charge of Ms. Gallegos when Ms. Gallegos suffered her third fall.

47.     Central Desert discussed possible causes of the hemorrhage with Ms. Gallegos's daughter, attributing the injury to the falls Ms. Gallegos sustained prior to arriving at Central Desert.

48.     Central Desert alleges the cause of Ms. Gallegos's hemorrhage is the result of falls prior to arriving at Central Desert and not the result of her three serious falls on August 14th, 16th, and 18th.

49.     On August 19, 2014, Central Desert discharged Ms. Gallegos and directed her to seek medical treatment and care from a facility located across the street.

50.     Central Desert did not discuss any treatment plan with Ms. Gallegos, her daughter, or her son in order to manage her rapidly declining medical condition.

## COUNT I – MEDICAL NEGLIGENCE
### (DURHAM, STONE, DOES 1-10)

51.     Ms. Gallegos incorporates the foregoing allegations as though they were fully set forth herein.  *See* Rule 1-010C NMRA.

52.     In caring for Ms. Gallegos, Defendants Durham, Stone, and Does 1-10 had a duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified healthcare providers practicing under similar circumstances, giving due consideration to the locality involved.

53.     Defendants Durham, Stone, and Does 1-10 failed to possess or apply the knowledge, skill or care ordinarily used by reasonably well-qualified healthcare providers practicing under similar circumstances, giving due consideration to the locality involved.

54.     Defendants Durham, Stone, and Does 1-10 were aware of Ms. Gallegos' risk of falling, but failed to take appropriate action.

55.     The conduct of Defendants Durham, Stone, and Does 1-10 deviated from applicable standards in the following ways, but not by way of limitation:

a.     Failing to provide Ms. Gallegos with the standard of medical care due to a patient;

b.     Negligently acting outside the scope of expertise and medical specialty without proper training or certification;

c.     Failing to properly acknowledge that Ms. Gallegos was at risk of harm and wandering;

d.     Failing to apply standard accepted medical techniques with regard to caring and treating patients at risk of harm and wandering;

e.      Failing to properly acknowledge, treat and address Ms. Gallegos's medical condition;

f.      Failing to communicate alternatives to treatment; and

g.      Failing to inform Ms. Gallegos that she was in need of a doctor or other healthcare provider in order for her to receive proper treatment.

56.   Defendants Durham, Stone, and Does 1-10 acted willfully, maliciously, wantonly, and in reckless disregard for the safety and well-being of Ms. Gallegos.

57.   As a proximate result of the acts or omissions of Defendants Durham, Stone, and Does 1-10 and their willful, malicious, wanton and reckless misconduct, Ms. Gallegos:

a.      Suffered from decreased mental activity;

b.      Suffered a fracture of the left elbow;

c.      Suffered a large bruise on her left hip;

d.      Suffered a subarachnoid hemorrhage in her brain;

e.      Suffered severe bodily injuries;

f.      Required medical care and associated costs, such as x-rays and visits to the emergency room, which otherwise would not have been necessary but for the negligence of Does 1-10;

g.      Incurred pain and suffering associated with these injuries and the pain and suffering associated with the indignity of not being adequately cared for by Defendants Durham, Stone, and Does 1-10 as healthcare providers; and

h.      Incurred additional costs and expenses related to the care of Ms. Gallegos's permanent physical injuries.

## COUNT II – HOSPITAL NEGLIGENCE
### (DEFENDANT STORY AND THE CORPORATE DEFENDANTS)

58.     Ms. Gallegos incorporates the foregoing allegations as though they were fully set forth herein.  *See* Rule 1-010C NMRA.

59.     In caring for Ms. Gallegos, the Corporate Defendants had a duty to use ordinary care to avoid or prevent what a reasonably prudent hospital would foresee as an unreasonable risk of injury to another.

60.     In caring for Ms. Gallegos, the Corporate Defendants had a duty to possess and apply the knowledge and to use the skill and care ordinarily used in reasonably well-operated hospitals under similar circumstances, giving due consideration to the locality involved.

61.     The Corporate Defendants failed to possess or apply the knowledge, skill or care ordinarily used by reasonably well-operated hospital operating under the same or similar circumstances, giving due consideration to the locality involved.

62.     The conduct of the Corporate Defendants deviated from applicable standards in the following ways, but not by way of limitation:

    a.     Failing to provide Ms. Gallegos with the standard of medical care due to a patient;

    b.     Negligently acting outside the scope of expertise and medical specialty without proper training or certification;

    c.     Failing to properly acknowledge that Ms. Gallegos was at risk of harm and wandering;

    d.     Failing to apply standard accepted medical techniques with regard to caring and treating patients at risk of harm and wandering;

e.      Failing to properly acknowledge, treat and address Ms. Gallegos's medical condition;

f.      Failing to communicate alternatives to treatment;

g.      Failing to inform Ms. Gallegos that she was in need of a doctor or other healthcare provider in order for her to receive proper treatment;

h.      Failing to provide adequate staff, adequately paid staff, and adequately trained staff to care for residents such as Ms. Gallegos, with the full knowledge that such inadequate staffing practices would place patients such as Ms. Gallegos at risk for injuries;

i.      Negligently hiring, retaining and supervising staff with the full knowledge that such negligent staffing practices would place patients such as Ms. Gallegos at risk for injuries;

j.      Failing to provide and implement proper care plans that would adequately meet Ms. Gallegos's needs, including her risk for falling;

k.      Allowing Ms. Gallegos to remain unattended, unmonitored, and uncared for despite her known medical condition;

l.      Failing to provide a safe environment;

m.      Failing to ensure that Ms. Gallegos received adequate supervision and care;

n.      Failing to have adequate and effective policies, procedures, staff and equipment to adequately supervise and care for Ms. Gallegos;

o.      Failing to provide services and activities to attain or maintain the highest practicable physical, mental and psycho-social wellbeing of Ms. Gallegos in accordance with a written plan of care;

p.      Failing to adequately monitor Ms. Gallegos; and

q.      Failing to prevent harm to Ms. Gallegos from unsafe and hazardous conditions.

63.      The Corporate Defendants acted willfully, maliciously, wantonly and in reckless disregard for the safety and well-being of Ms. Gallegos.

64.      As a proximate result of the acts or omissions of the Corporate Defendants and their willful, malicious, wanton and reckless misconduct, Ms. Gallegos sustained damages.

## COUNT III – GENERAL NEGLIGENCE
### (ALL DEFENDANTS)

65.      Ms. Gallegos incorporates the foregoing allegations as though they were fully set forth herein.  *See* Rule 1-010C NMRA.

66.      Defendants were administrators and were responsible for evaluating and providing care to Ms. Gallegos.

67.      At all material times, the Defendants owed a duty of care to Ms. Gallegos to act as a reasonable and prudent administrator in evaluating and providing care to Ms. Gallegos.

68.      Defendants breached this duty and, therefore, were negligent.

69.      Defendants were negligent in the following ways, but not by way of limitation:

a.      Failing to provide adequate services and care;

b.      Failing to properly administer or direct staff to provide adequate services and care;

c.      Failing to establish adequate care planning and/or failing to ensure such care planning was followed;

d.      Failing to ensure adequate supervision of Ms. Gallegos;

e.      Failing to adequately staff and/or supervise the staff of the Corporate

Defendants; and

f.      Failing to have adequate policies and procedures in place and/or failing to

follow such policies and procedures.

70.     Defendants acted willfully, maliciously, wantonly and in reckless disregard for

the safety and well-being of Ms. Gallegos.

71.     As a proximate result of the acts or omissions of Defendants and their willful,

malicious, wanton and reckless misconduct, Ms. Gallegos sustained damages.

<u>COUNT IV –</u>
<u>VIOLATIONS OF THE RESIDENT ABUSE AND NEGLECT ACT</u>
(ALL DEFENDANTS)

72.     Ms. Gallegos incorporates the foregoing allegations as though they were fully set

forth herein.  *See* Rule 1-010C NMRA.

73.     The Resident Abuse and Neglect Act, NMSA 1978, 30-47-3, *et seq.* (the "Act"),

which applies to, among other things, care facilities, nursing facilities, and hospitals, defines

abuse as "any act or failure to act performed intentionally, knowingly, or recklessly that causes

or is likely to cause harm to a resident, including: (4) medically inappropriate conduct that causes

or is likely to cause physical harm to a resident."

74.     Under the Act, "resident" means any person who resides in a care facility or who

receives treatment from a care facility.  NMSA 1978, § 30-47-3(I).

75.     "[C]are facility" means a hospital; skilled nursing facility; intermediate care

facility; care facility for the mentally retarded; psychiatric facility; rehabilitation facility; kidney

disease treatment center; home health agency; ambulatory surgical or outpatient facility; home

for the aged or disabled; group home; adult foster care home; private residence that provides

12

personal care, sheltered care or nursing care for one or more persons; a resident's or care provider's home in which personal care, sheltered care or nursing care is provided; adult day care center; boarding home; adult residential shelter care home; and any other health or resident care related facility or home, but does not include a care facility located at or performing services for any correctional facility. NMSA 1978, §30-47-3(B).

76.     Central Desert is a health care facility as defined under the Act, and Ms. Gallegos was a resident as defined under the Act.

77.     "Neglect" under the Act means, the grossly negligent (1) failure to provide any treatment, service, care, medication or item that is necessary to maintain the health or safety of a resident; (2) failure to take any reasonable precaution that is necessary to prevent damage to the health or safety of a resident; or (3) failure to carry out a duty to supervise properly or control the provision of any treatment, care, good, service, or medication necessary to maintain the health or safety of residents.  NMSA 1978, § 30-47-3(F).

78.     Defendants and its employees failed to take such reasonable precautions as were necessary to prevent damage to Ms. Gallegos' health and safety, including but not limited to:

    a.      Failing to provide Ms. Gallegos with the standard of medical care due to a patient;

    b.      Negligently acting outside the scope of expertise and medical specialty without proper training or certification;

    c.      Failing to properly acknowledge that Ms. Gallegos was at risk of harm and wandering;

    d.      Failing to apply standard accepted medical techniques with regard to caring and treating patients at risk of harm and wandering;

e.      Failing to properly acknowledge, treat and address Ms. Gallegos's medical condition;

f.      Failing to communicate alternatives to treatment;

g.      Failing to inform Ms. Gallegos that she was in need of a doctor or other healthcare provider in order for her to receive proper treatment;

h.      Failing to provide adequate staff, adequately paid staff, and adequately trained staff to care for residents such as Ms. Gallegos, with the full knowledge that such inadequate staffing practices would place patients such as Ms. Gallegos at risk for injuries;

i.      Negligently hiring, retaining and supervising staff with the full knowledge that such negligent staffing practices would place patients such as Ms. Gallegos at risk for injuries;

j.      Failing to provide and implement proper care plans that would adequately meet Ms. Gallegos's needs, including her risk for falling;

k.      Allowing Ms. Gallegos to remain unattended, unmonitored, and uncared for despite her known medical condition;

l.      Failing to provide a safe environment;

m.      Failing to ensure that Ms. Gallegos received adequate supervision and care;

n.      Failing to have adequate and effective policies, procedures, staff and equipment to adequately supervise and care for Ms. Gallegos;

o.      Failing to provide services and activities to attain or maintain the highest practicable physical, mental and psycho-social wellbeing of Ms. Gallegos in accordance with a written plan of care;

14

       p.      Failing to adequately monitor Ms. Gallegos; and

       q.      Failing to prevent harm to Ms. Gallegos from unsafe and hazardous conditions.

79.    Defendants and its employees failed to carry out their duties to supervise properly or control the provision of any care or service necessary to maintain Ms. Gallegos's health and safety.

80.    Defendants acted willfully, maliciously, wantonly and in reckless disregard for the safety and well-being of Ms. Gallegos.

81.    As a direct and proximate result of the acts or omissions of Defendants and their willful, malicious, wanton and reckless misconduct, Ms. Gallegos sustained damages.

## COUNT V – NEGLIGENCE *PER SE*
### (ALL DEFENDANTS)

82.    Ms. Gallegos incorporates the foregoing allegations as though they were fully set forth herein.  *See* Rule 1-010C NMRA.

83.    At the time of the above referenced event, there were in force and effect certain statutes and ordinances that were violated by Defendants, including but not limited to:

       a.      NMSA 1978, 30-47-3, *et seq.*;

       b.      NMSA 1978, § 30-47-3(F)

84.    These statutes prohibit certain actions and/or create a standard of conduct when operating, among other things, care facilities, nursing facilities, and hospitals, and caring for individuals such as Ms. Gallegos.  Defendants' conduct represents an unexcused violation of these standards.

85.    Ms. Gallegos belongs to a class of persons to which these statutes were meant to protect, and the harm or injury is generally of the type these statutes seek to prevent.

86.     As a direct and proximate result of the acts or omissions of Defendants and their willful, malicious, wanton and reckless misconduct, Ms. Gallegos sustained damages.

### COUNT VI – VICARIOUS LIABILITY
### (THE CORPORATE DEFENDANTS)

87.     Ms. Gallegos incorporates the foregoing allegations as though they were fully set forth herein.  *See* Rule 1-010C NMRA.

88.     At all material times, Defendant Stone and Does 1-10 were employees, agents, apparent agents, and/or contractors of one or more of the Corporate Defendants and were responsible for providing medical care and treatment to Ms. Gallegos.

89.     At all material times, Defendant Stone and Does 1-10 were acting within the course and scope of their employment in providing medical care and treatment to Ms. Gallegos.

90.     The Corporate Defendants were the direct and immediate supervisors of Defendant Stone and Does 1-10.

91.     The Corporate Defendants retained the right to control the manner in which Defendant Stone and Does 1-10 cared for Ms. Gallegos.

92.     Ms. Gallegos sustained injuries and damages while she was in the care of Defendant Stone and Does 1-10.

93.     Accordingly, the Corporate Defendants are liable for the injuries and damages Ms. Gallegos sustained while under their care and the care of Defendant Stone and Does 1-10.

### COUNT VII – BREACH OF ACTUAL AND IMPLIED CONTRACT
### (ALL DEFENDANTS)

94.     Ms. Gallegos incorporates the foregoing allegations as though they were fully set forth herein.  *See* Rule 1-010C NMRA.

95.     Ms. Gallegos contracted with Defendants for health care services.  At the time of Ms. Gallegos's admission, Defendants were given actual notice of Ms. Gallegos's physical and mental condition and infirmities associated therewith, and promised appropriate healthcare.

96.     Defendants had an actual contract and implied contract with Ms. Gallegos that required Defendants to provide appropriate healthcare to Ms. Gallegos and reasonably protect her from injury and neglect.

97.     As a direct and proximate result of the acts and omissions set forth herein, Defendants breached their contract with Ms. Gallegos.

98.     In breaching the contract, Defendants acted willfully, maliciously, wantonly, and in reckless disregard for the safety and well-being of Ms. Gallegos.

99.     As a direct and proximate result of this contractual breach by Defendants, Ms. Gallegos suffered injuries and damages.

100.     In addition, Ms. Gallegos, or others on her behalf, made payments to Defendants for services that were promised, but not delivered, not the least of which was the promise for competent medical care, and a professional standard of care.

<u>**COUNT VIII– CIRCUMSTANTIAL EVIDENCE OF**</u>
<u>**MEDICAL NEGLIGENCE AND GENERAL NEGLIGENCE**</u>
**(ALL DEFENDANTS)**

101.     Ms. Gallegos incorporates the foregoing allegations as though they were fully set forth herein.  *See* Rule 1-010C NMRA.

102.     Defendants had a duty to properly manage and control the medical care and treatment provided to Ms. Gallegos.

103.     Defendants proximately caused Ms. Gallegos's injuries and damages, which was their responsibility to manage and control.

104.     Ms. Gallegos's injuries and damages are of the kind that would not ordinarily occur in the absence of negligence on the part of Defendants.

105.     Accordingly, the doctrine of *res ipsa loquitur* is available as a proper theory of negligence, causation, and damages and is properly pled herein.

## DAMAGES

106.     Ms. Gallegos incorporates the foregoing allegations as though they were fully set forth herein.  *See* Rule 1-010C NMRA.

107.     As a direct and proximate result of the negligent actions of Defendants enumerated above, Ms. Gallegos seeks the following damages:

      a.     Loss of household services and other pecuniary losses;

      b.     Physical and emotional pain and suffering and other debilitating pain including temporary and permanent disfigurement and injuries;

      c.     Past and future medical expenses;

      d.     Loss of enjoyment of life;

      e.     Pre-judgment and post-judgment interest;

      f.     Costs of bringing suit;

      g.     Punitive damages; and

      h.     For such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Gallegos herein requests judgment against Defendants for her damages and such other relief as permitted by law against Defendants.

GUEBERT BRUCKNER P.C.

By ___*/s/ Elizabeth M. Piazza*_____
        Christopher J. DeLara
        David C. Odegard
        Elizabeth M. Piazza
        P.O. Box 93880
        Albuquerque, NM 87199-3880
        (505) 823-2300
        cdelara@guebertlaw.com
        dodegard@guebertlaw.com
        epiazza@guebertlaw.com
        *Attorneys for Plaintiff*

This is to certify that on this 25th day of May, 2016, the foregoing Amended Complaint for Medical Negligence, Hospital Negligence, General Negligence, Negligence *per se*, Breach of Actual and Implied Contract, Vicarious Liability and *Res Ipsa Loquitur* was filed electronically through the CM/ECF system, which caused the following to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Robert C. Conklin
Traci N. Olivas
Conklin, Woodcock & Ziegler, P.C.
320 Gold SW, Suite 800
Albuquerque, NM 87102
(505) 224-9160
rcc@conklinfirm.com
tno@conklinfirm.com
*Attorney for Defendants Behavioral Health*
*Services of New Mexico, LLC, d/b/a*
*Central Desert Behavioral Health Center and*
*Fundamental Clinic and Operational Services, LLC*


*/s/ Elizabeth M. Piazza*
Christopher J. DeLara
David C. Odegard
Elizabeth M. Piazza
*Attorneys for Plaintiff*

F:\Clients\7500.001cf\Pleadings\Federal\Amended Complaint.docx/jrg